QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Suite 600
Phoenix, AZ 85004-2322
TELEPHONE 602-229-5200

Benjamin C. Nielsen (029689)
Benjamin.Nielsen@quarles.com
Kristin N. Leaptrott (038590)
Kristin.Leaptrott@quarles.com

*Attorneys for Petitioner U.S. Bank N.A.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U.S. Bank N.A., a foreign corporation,<br>Petitioner,<br>v.<br>David Y. Smith, an individual,<br>Respondent. | NO: 2:26-cv-00430-DWL<br>**U.S. BANK N.A.'S RESPONSE TO RESPONDENT DAVID Y. SMITH'S AMENDED MOTION TO VACATE ARBITRATION AWARD AND OPPOSITION TO PETITION TO CONFIRM** |

Petitioner U.S. Bank N.A. hereby opposes Respondent David Y. Smith's *Amended Motion to Vacate Arbitration Award and Opposition to Petition to Confirm* (the "**Amended Motion**") (Dkt. 12.) This response is supported by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

A party seeking to vacate an arbitration award under the Federal Arbitration Act bears a heavy ***burden of proving*** that one of the grounds for vacatur under the FAA applies. *Waveland Cap. Partners, LLC v. Tommerup*, 928 F. Supp. 2d 1227, 1231 (D. Mont. 2013) (stating that the "showing required to avoid confirmation of the award is very high"); *U.S. Life Ins. Co. v. Sup. Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) ("The burden of establishing grounds for vacating an arbitration award is on the party seeking it."). Smith's Amended Motion fails to meet this heavy

burden of proof. It contains nothing more than Smith's view of the facts. Smith provides no evidentiary support. The Court should deny the Amended Motion and confirm U.S. Bank's arbitration award for this reason alone. Smith did not establish grounds for vacating the award.

But even if the Court were to assume Smith's allegations constitute evidence with which Smith could even theoretically carry his heavy burden of proof, which the Court should not, Smith's Amended Motion fails on the merits. The Amended Motion is nothing more than an improper, facial attack on the findings of fact, conclusions of law, and decisions reached by the arbitrator. Smith was represented by competent counsel throughout the arbitration proceedings, and the arbitration was indisputably fair to Smith. The parties engaged in months of discovery resulting in the disclosure of thousands of pages of documents. The proceedings culminated in an evidentiary hearing involving over one hundred exhibits and two days of testimony from Smith's witnesses and Smith himself, as well as comprehensive post-hearing briefs.

Instead of seeking review of the award under the narrow grounds available to him under the FAA, Smith simply asks this Court to substitute its judgment for that of the arbitrator. The FAA does not permit that. Smith cannot re-litigate his case in this forum simply because he is dissatisfied with the outcome of the arbitration. And U.S. Bank should not be required to expend more resources defending against the same meritless claims that the Arbitrator already decided in an undeniably fair and thorough arbitration proceeding. The Amended Motion should be denied.

## II. Background Facts

Smith initially sued U.S. Bank in Pinal Superior Court, seeking to hold U.S. Bank liable for approximately $400,000 of alleged unauthorized transactions performed on his U.S. Bank accounts by his power-of-attorney, Kenneth Bennett. (Declaration of Benjamin C. Nielsen, ¶ 4, attached hereto as **Exhibit 1**.) U.S. Bank successfully moved to compel arbitration pursuant to Smith's Deposit Account

Agreement which was signed on Smith's behalf by Robin Green, Smith's aunt and former power-of-attorney. (Account Agreement, attached hereto as **Exhibit 2**; *Order* dated November 2, 2024, attached hereto as **Exhibit 3**.) In granting U.S. Bank's motion to compel, Judge Olson of the Pinal Superior Court found that "the parties entered into a facially valid and enforceable arbitration agreement at the time [Smith] opened a banking account with [U.S. Bank], by and through [Smith's] agent and power of attorney," and rejected Smith's arguments regarding procedural and substantive unconscionability. (Ex. 3.)

Smith subsequently initiated AAA arbitration against U.S. Bank asserting claims of negligence and breach of contract. (Ex. 1, ¶ 5.) The arbitration was conducted by Sally Duncan, a former, very well-respected judge of the Arizona Superior Court. (Ex. 1, ¶ 6.)

A two-day evidentiary hearing was scheduled for September 11–12, 2025. (Ex. 1, ¶ 8.) Prior to the hearing, the parties engaged in many months of discovery. (Ex. 1, ¶¶ 7–8.) U.S. Bank produced thousands of pages of documents, including its own documents and those obtained through third-party subpoenas. (Ex. 1, ¶ 7.) In connection with the hearing, U.S. Bank and Smith each disclosed fifty-two exhibits. (Ex. 1, ¶¶ 11–12.)

On the morning of the hearing, the Arbitrator permitted Smith to assert a claim against U.S. Bank for breach of the implied covenant of good faith and fair dealing (even though he had never previously pled or identified such a claim). (Ex. 1, ¶ 14.) At the hearing, Smith called five witnesses, including himself and U.S. Bank employees. (Ex. 1, ¶ 15.) U.S. Bank called no witnesses. (Ex. 1, ¶ 18.)

Following the hearing, the parties submitted comprehensive closing briefs. (*See* Smith's Closing Brief, attached hereto as **Exhibit 4**; U.S. Bank's Closing Brief, attached hereto as **Exhibit 5**.)

Smith argued in his closing brief and at the hearing that U.S. Bank was negligent by "accept[ing] a POA that shows visible signs of alteration[.]" (Ex. 4, p.

9.) Smith further alleged that U.S. Bank breached the Deposit Account Agreement by "allow[ing] Bennet to loot Smith's account while Smith was incarcerated and powerless to intervene" and by failing to send Smith's bank statements to him in prison after he requested them in June 2022 (after the alleged unauthorized transactions occurred). (Ex. 4, p. 10.) Finally, Smith alleged that U.S. Bank breached the implied covenant of good faith and fair dealing by "conceal[ing] the April 8 POA," "misrepresent[ing] its existence to Smith's lawyer as late as 2023," and "with[holding] statements despite notarized requests." (Ex. 4, p. 11.)

U.S. Bank argued in its closing brief and proved at the hearing that Smith had failed to meet his burden of proving any of his claims. (Ex. 5, pp. 9–18.) U.S. Bank further argued that the vast majority of Smith's total damages were barred by the Account Agreement. (Ex. 5, pp. 3–8.) The Account Agreement set forth certain requirements that must be met before U.S. Bank could be found liable for unauthorized transactions other than "consumer electronic banking transactions". (Ex. 2, p. 14.) These requirements included: (1) that the customer report the unauthorized transactions within thirty (30) days after U.S. Bank made the customer's bank statement available to the customer; and (2) that the customer initiate legal action against U.S. Bank within one year after U.S. Bank made the bank statement available to the customer. (Ex. 2, p. 14.) U.S. Bank argued in its closing brief that over 95% of the alleged unauthorized transactions at issue in the arbitration were not "consumer electronic banking transactions," that U.S. Bank made the bank statements reflecting those alleged unauthorized transactions available to Smith, and that Smith neither reported those unauthorized transactions within thirty days nor initiated legal action within one year after U.S. Bank made those bank statements available to him. (Ex. 5, pp. 3–8.)

On November 7, 2025, the Arbitrator entered the Final Arbitration Award. (Final Arbitration Award, attached hereto as **Exhibit 6**.) In the Award, the Arbitrator found that Smith failed to meet his burden of proving his claims for negligence,

breach of contract, and/or breach of the implied covenant. (Ex. 6, ¶¶ 1–3.) The Arbitrator further found that Smith failed to timely notify U.S. Bank of the "non-consumer electronic banking transactions" (i.e., the alleged unauthorized transactions other than consumer electronic banking transactions), which were subject to the notice and filing requirements in the Account Agreement. (Ex. 6, ¶ 6.) The Arbitrator further found that U.S. Bank was entitled to recover its attorneys' fees and costs pursuant to the Deposit Account Agreement and A.R.S. § 12-341 and § 12-341.01. (Ex. 6, ¶ 9.)

On January 13, 2026, Smith filed a motion to vacate the Award in the Pinal County Superior Court action. (Ex. 1, ¶ 19.) That action had been dismissed on September 2, 2025, and remains closed as of the date of this filing. (Ex. 1, ¶ 20.)[1] U.S. Bank then initiated this action seeking to confirm the award on January 22, 2026. (Dkt. 1.) Smith filed a motion to vacate (Dkt. 11), which was then superseded by the Amended Motion (Dkt. 12).

## III. <u>Legal Standard</u>

The FAA "expresses a presumption that arbitration awards will be confirmed." *Smith v. ATC/Vancom, Inc.*, 2007 WL 9728626, at *5 (D. Nev. May 16, 2007) (citing *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F. 2d 1531, 1534 (9th Cir. 1987)); *see also U.S. Trinity Energy Servs., LLC v. Se. Directional Drilling, LLC*, 135 F. 4th 303, 307 (5th Cir. 2025) ("'[D]oubts or uncertainties must be resolved in favor of upholding' an arbitration award.") (quoting *Cooper v. WestEnd Cap. Mgmt., LLC*, 832 F.3d 534, 544 (5th Cir. 2016)). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation of the award is very high." *Waveland Cap. Partners, LLC*, 928 F.Supp. at 1231; *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1287 (9th Cir.

[1] U.S. Bank filed a brief response to Smith's motion in the Pinal superior court action, alerting the court that the matter had been closed and that U.S. Bank had initiated confirmation proceedings in this Court.

2009) (review of an arbitration award is "both limited and highly deferential") (citation omitted).

The FAA does not sanction wholesale judicial review of the underlying merits of an arbitration award (as Smith is asking the Court to do here). *Collins v. D.R. Horton, Inc.*, 505 F. 3d 874, 879 (9th Cir. 2007). Instead, Section 10 of the FAA sets forth the exclusive, limited grounds upon which a court may vacate an arbitration award. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 590 (2008) ("We now hold that §§ 10 and 11 provide the FAA's exclusive grounds for expedited vacatur and modification."). These exclusive grounds include:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## IV. <u>The Award must be confirmed because none of the limited grounds available to vacate the Award under the FAA apply.</u>

The Award was entered following binding arbitration under the FAA as set forth in the Account Agreement. (Ex. 2, pp. 17–18.) The Account Agreement provides that an arbitration award entered on a dispute between U.S. Bank and a customer is "final and binding, subject to judicial review only to the extent allowed under the Federal Arbitration Act," and that either party "may seek to have the award vacated or confirmed and entered as a judgment in any court having jurisdiction." (Ex. 2, pp. 17–18.)

Section 9 of the FAA states that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified. . . .

9 U.S.C. § 9. Here, the parties have not sought to modify or correct the Award. The Award must therefore be confirmed unless one of the grounds for vacatur are present. None of them are, and certainly none of them have been shown to be present by Smith.

In the Amended Motion, Smith alleges in a conclusory fashion (with no evidence or legal support) that the Award should be vacated because: (1) the Arbitrator exceeded her powers; (2) the Arbitrator refused to consider material evidence; (3) the Award manifestly disregards Arizona law; (4) the Award is unconscionable; and (5) the Award is "fundamentally unfair." As explained above and further below, Smith has not met his burden of proving that any grounds to vacate the Award available under the FAA apply here. The Award should be confirmed.

**A. <u>The Arbitrator did not exceed her powers in entering the Award.</u>**

Under the FAA, an arbitrator exceeds her powers only when she "purport[s] to exercise powers that the parties did not intend [her] to possess or otherwise display[s] a manifest disregard for the law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F. 3d 987, 1002–03 (9th Cir. 2003). Smith failed to meet his burden of proving that the Arbitrator exercised powers that the parties did not intend her to possess or that she manifestly disregarded Arizona law.

. . .

. . .

. . .

**1. The Arbitrator did not exercise powers that the parties did not intend her to possess.**

An arbitrator exceeds her powers under Section 10(a)(4) not where she "assigns an erroneous reason for [her] decision," but where when [she] 'act[s] outside the scope of the parties contractual agreement.'" *Medi-Soft, Inc. v. Royco, Inc.*, 21 Fed. App'x 570, 572 (9th Cir. 2001) (citations omitted); *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 643 (9th Cir. 2010) (citations omitted).

Here, Smith argues that the Arbitrator exceeded her powers by "applying the wrong contractual provision" and by "enforcing a notice requirement when the Bank never made statements available to Smith." Smith's arguments fail.

i. <u>The Arbitrator did not apply the wrong contractual provision</u>.

The Account Agreement required Smith to timely notify U.S. Bank of any unauthorized transactions, other than "consumer electronic banking transactions," within 30 days after U.S. Bank made a bank statement reflecting an unauthorized transaction available to Smith. (Ex. 2, p. 14.) The Account Agreement further stated that Smith would lose the right to recover from U.S. Bank for any unauthorized transactions, other than "consumer electronic banking transactions," if Smith did not file suit against U.S. Bank within one year of U.S. Bank making Smith's bank statement available to him. (Ex. 2, p. 14.)

U.S. Bank argued in the arbitration that $386,438.41[2] of the unauthorized transactions alleged by Smith were *not* consumer electronic banking transactions, that those transactions were therefore subject to the notice and filing requirements in the Account Agreement, and that Smith failed to comply with those requirements. (Ex. 5, pp. 3–8.) The Arbitrator agreed with U.S. Bank and held in the Award that Smith "failed to notify [U.S. Bank] of the non-consumer electronic banking

[2] Smith agrees in the Amended Motion that at least $374,370 of the total alleged unauthorized transactions on Smith's account were not consumer electronic banking transactions. (*See* Dkt. 12, pp. 16–18.)

transactions at issue in this proceeding within the period required by the Deposit Account Agreement" and that he further "failed to initiate legal action against [U.S. Bank] for the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement." (Ex. 6, ¶¶ 6–7.)

To the extent the Court finds the Award's reference to "non-consumer electronic banking transactions" ambiguous, such ambiguity does not justify vacatur of the Award.

First, any facial ambiguity in the Award is fully resolved by the record. *See Int'l Brotherhood of Electric Workers v. ADT, LLC*, 2018 WL 6696694, at *2 (W.D. Wash. Dec. 20, 2018) (courts may enforce ambiguous awards if "the ambiguity can be resolved from the record"). In U.S. Bank's closing brief, U.S. Bank referred to transactions *other than* consumer electronic banking transactions as "non-consumer electronic banking transactions." (*See* Ex. 5, p. 8.) That language is simply mirrored in the Award.

Moreover, any ambiguity is not material or prejudicial to Smith. *See Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1488 (9th Cir.1991) ("[T]o merit vacatur, the ambiguity must be *substantial* and adversely affect a party's ability to understand or comply with the award."). U.S. Bank raised Smith's failure to comply with the notice and filing requirements in the Account Agreement as an affirmative defense. The Arbitrator's findings regarding this defense are irrelevant to the Award itself because the Arbitrator also found that Smith failed to meet his burden of proving his affirmative claims against U.S. Bank. (Ex. 6, ¶¶ 1–3.) To reiterate, regardless of Smith's failure to timely act under the Account Agreement with respect to the vast majority of his damages (which would have precluded recovery of same), the Arbitrator ***also*** found that Smith had failed to meet his burden of proof on any of his claims.

ii. The Arbitrator did not exceed her powers by enforcing the notice requirement in Smith's Account Agreement.

Smith argues that the Arbitrator exceeded her powers by "enforcing a notice requirement when the Bank never made statements available to Smith." (Dkt. 12, p. 25.)

This argument fails because the issue of whether and when U.S. Bank made Smith's bank statements available to him is a question of fact. *See, e.g.*, *Cooley v. First Nat'l Bank of Little Rock*, 276 Ark. 387, 389 (1982) ("[W]hether the bank statements were sent was, of course, a question of fact."). That issue was discussed at length in both parties' closing briefs and was the subject of considerable amounts of exhibits and live testimony during the Arbitration. (*See* Ex. 4, pp. 11–13; Ex. 5, pp. 5–8.) The Arbitrator's factual findings on this issue are supported by the record and are not subject to reconsideration by this Court in any event. *See Kyocera Corp.*, 341 F. 3d at 994 (stating that "unsubstantiated factual findings" do not "justify federal court review of an arbitral award").

**2. The Arbitrator did not manifestly disregard Arizona law.**

"Manifest disregard" for the law does not refer to a mere incorrect interpretation of law. *Kyocera Corp.*, 341 F. 3d at 994 ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard."). Indeed, "[t]he risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law . . . is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced" by Section 10 of the FAA. *Id.* at 1002–03. Instead, Smith must point to evidence showing that the Arbitrator "understood and correctly stated the law, but then proceeded to ignore it." *Collins v. D.R. Horton, Inc.*, 361 F. Supp. 2d 1085, 1100 (D. Ariz. 2005).

"[T]here must be some evidence in the record, ***other than the result***, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack v. Soward*, 586 F. 3d 1096, 1104 (9th Cir. 2009) (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F. 3d 672, 675 (8th Cir. 2004)) (emphasis added). And "[t]o rise to the level of manifest disregard, 'the governing law alleged to have been ignored by the arbitrators must ***be well defined, explicit, and clearly applicable***.'" *Kaliroy Produce Co., Inc. v. Pac. Tomato Growers, Inc.*, 730 F. Supp. 2d 1036, 1041 (D. Ariz. 2010) (quoting *Collins*, 505 F. 3d at 879–80) (emphasis added).

Here, Smith has not identified any evidence in the record indicating that the Arbitrator intentionally disregarded any well-defined, explicit, and clearly applicable Arizona law. Smith again failed to carry his burden of proof.

i. The Arbitrator did not disregard A.R.S. § 47-4406(E).

A.R.S. § 47-4406 provides that if a bank makes bank statements available to a customer, the customer has a duty to "exercise reasonable promptness in examining the statement" and "promptly notify the bank" of unauthorized transactions. A.R.S. § 47-4406(C). Subsection E of that statute provides that if the "customer proves that the bank failed to exercise ordinary care," the loss is allocated between the customer and the bank, and that the customer is not precluded from recovering "if the customer proves that the bank did not pay the item in good faith." *Id.* § 47-4406(E).

Smith provided no evidence supporting his assertion that the Arbitrator was aware of and intentionally ignored this statute. Smith's argument fails for that reason alone. *See ENH LLC v. Amazon.com Servs. LLC*, 2025 WL 1447514, at *4 (W.D. Wash. May 20, 2025) (finding the "conclusory assertion that the arbitrator 'disregarded textbook law'" to be "insufficient to support vacatur"); *Freedom Invs. Corp. v. Gantan*, 2018 WL 1609581, at *4 (N.D. Cal. Apr. 3, 2018) (rejecting "conclusory and unsupported" "assertion that the arbitration panel 'ignored' controlling law").

Instead of presenting evidence showing that the Arbitrator understood and intentionally disregarded A.R.S. § 47-4406, Smith simply asserts that the evidence "established" that U.S. Bank did not exercise ordinary care and did not act in good faith. But whether U.S. Bank acted with ordinary care and in good faith are questions of fact, which here the Arbitrator determined. *See San Tan Irr. Dist. v. Wells Fargo Bank*, 197 Ariz. 193, 197 ¶ 16 (App. 2000) ("Both the question of negligence and the question of causation are ordinarily questions of fact, as is . . . the extent to which the bank's negligence contributed to the loss."); *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 329 ¶ 15 (App. 1998) ("[G]ood faith is generally a question of fact. . . ."). And in determining whether an arbitrator manifestly disregarded the law, this Court is not empowered to reconsider an arbitrator's factual findings. *See United Assoc. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the U.S. & Can., Local 246 v. JT2 Inc.*, 2024 WL 5317045, at *3 (C.D. Cal. Sept. 30, 2024) ("Courts do not have power to review the arbitrator's factual findings under the 'manifest disregard' standard."); *see also Coutee v. Barington Cap. Grp., L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003) ("Manifest disregard of the facts is not an independent ground for vacatur in this circuit.").

In short, Smith's disagreement with the Arbitrator's rulings does not satisfy his burden of proving that the Arbitrator manifestly disregarded A.R.S. § 47-4406. Smith's unsupported assertion that the Arbitrator disregarded this statute fails.

ii. The Arbitrator did not disregard *Stewart v. Phoenix National Bank, Rawlings v. Apodaca, or Doe v. Roe*.

Smith asserts that the Award manifestly disregards three Arizona cases: *Stewart v. Phoenix National Bank*, 49 Ariz. 34 (1937); *Rawlings v. Apodaca*, 151 Ariz. 149 (1986); and *Doe v. Roe*, 191 Ariz. 313 (1998). (Dkt. 12, p. 22.) Smith simply identifies these cases in the Amended Motion without providing any explanation as to how the Arbitrator manifestly disregarded these cases (which she did not). Smith's conclusory assertions that the Arbitrator manifestly disregarded the

law are insufficient to justify vacatur of the Award. Smith was instead required to identify some evidence in the record, other than the mere fact that the Arbitrator ruled against Smith, showing that the Arbitrator was aware of the law and intentionally disregarded it. *Bosack*, 586 F.3d at 1104; *Collins*, 505 F. 3d at 879. Smith failed to do so here.

**3. The Arbitrator did not refuse to consider material evidence.**

Smith argues that "[t]he Arbitrator's finding that Smith failed to meet his burden of proof cannot be reconciled with the evidence presented." (Dkt. 12, p. 21.) This argument lacks merit and constitutes yet another improper attack on the factual findings of the Arbitrator.

"[T]he phrase 'refusing to hear evidence pertinent and material to the controversy' necessarily implies prejudice to the rights of a party." *U.S. Life Ins. Co.*, 591 F.3d at 1174. Arbitrators enjoy broad discretion to admit or exclude evidence. *Id.* at 1175. To justify vacating an arbitration award on the basis that an arbitrator refused to hear material evidence, Smith must prove that the arbitrator's refusal to hear evidence "demonstrate[s] bad faith or be so gross as to amount to affirmative misconduct." *Immersion Corp. v. Sony Comput. Enter. Am. LLC*, 188 F.Supp. 3d 960, 974 (N.D. Cal. 2016) (quoting *United Paperworkers Int'l Union, ALF-CIO v. Misco, Inc.*, 484 U.S. 29, 30 (1987)).

Section 10(a)(3) addresses procedural misconduct—it does not apply where an arbitrator considers evidence but affords it less weight than what one party believes the evidence deserves. *Immersion Corp.*, 188 F. Supp. 3d at 975; *see also Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 932 F.3d 1, 10 (1st Cir. 2019) ("What DAC's gripe really comes down to is the weight given to that evidence by the arbitrator. And on that front we have made pellucid that it is not our place to chime in on the weight allotted to any given piece of evidence submitted to the arbitrator.").

Smith does not identify any evidence that the Arbitrator actually refused to consider, let alone any evidence that the Arbitrator refused to consider in bad faith.

Nor could he do so, because the issues Smith claims the Arbitrator refused to consider were all discussed at length in the one-hundred plus exhibits, during the hearing, and in Smith's closing brief. (*See* Ex. 1, ¶ 11–13, 17; Ex. 4.) Indeed, in the Amended Motion Smith argues only that the Arbitrator "effectively" refused to consider certain evidence, presumably because the Arbitrator ruled against Smith. But Section 10(a)(3) does not permit vacatur because one party disagrees with how an arbitrator rules based on the evidence presented to her. *Arora v. TD Ameritrade, Inc.*, 2010 WL 2925178, at *4 (N.D. Cal. July 26, 2010) ("That the panel ultimately found Plaintiff's arguments unpersuasive does not support the inference that it refused to hear pertinent or material evidence in support of his claims."). Smith has failed to meet his burden to prove that the Award should be vacated on this basis.

**4. The Award is not unconscionable.**

Smith argues that the Award is both procedurally and substantively unconscionable. "Unconscionability" is not one of the grounds available to vacate an arbitration award under the FAA and the Court should therefore not consider this issue. Nonetheless, it appears to U.S. Bank that Smith's argument here is not that the Award is unconscionable, but that the underlying arbitration agreement itself and the fairness of the underlying arbitration proceedings are unconscionable.

To start, Smith's challenges to the enforceability of the arbitration agreement are improper. This issue was already litigated in the Arizona superior court when U.S. Bank moved to compel arbitration in that proceeding. That court determined that the arbitration agreement was not substantively or procedurally unconscionable, and that Smith was bound by the arbitration agreement because it was signed on Smith's behalf by his valid power-of-attorney. (Ex. 3.) Smith provides no basis for this Court to reconsider that decision. And Smith himself chose not only to initiate arbitration; he actively participated in the arbitration proceedings for the better part of a year—through discovery, dispositive motion practice, a live hearing, post-

hearing briefs, and entry of the Award. Smith has waived any claim that the arbitration agreement is not enforceable.

Indeed, "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator after receiving an unfavorable result." *Nghiem v. NEC Electronic, Inc.*, 25 F. 3d 1437, 1440 (9th Cir. 1994) (quoting *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F. 2d 1355, 1356 (9th Cir. 1983)). Again, here Smith submitted his claims to arbitration, fully participated in the arbitration proceedings, and submitted a lengthy closing brief asking the Arbitrator to issue a ruling on his claims against U.S. Bank. Smith cannot now claim that the Arbitrator lacked the power to issue a binding decision on his claims merely because he is unhappy with the Arbitrator's decision.

Next, Smith claims that his inability to access the internet, attend hearings in person, or have open access to phone and email communications rendered the arbitration proceeding unconscionable. But Smith's personal circumstances do not justify vacating the Award, especially considering that Smith was represented by competent counsel at all times during the arbitration. Moreover, Smith's circumstances are the result of his incarceration, not the arbitration. They would be present regardless of the forum in which Smith brought his claims against U.S. Bank.[3]

**5. The arbitration proceedings were not fundamentally unfair to Smith.**

An arbitration proceeding is "fundamentally fair if it meets "'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987) (citation omitted). Here, Smith received all three—he participated fully in the arbitration proceeding, the

[3] And the evidence and circumstances demonstrated that Smith in fact did have access to the internet, could send emails, met with his lawyer on multiple occasions, and attended the entire two-day hearing via Zoom (which is, these days, commonplace).

Arbitrator held a two-day evidentiary hearing, and there is no evidence anywhere in the record suggesting that the Arbitrator's decision was biased in favor of U.S. Bank.

Smith argues that the Award is fundamentally unfair because the arbitration proceedings "pitted" him against U.S. Bank. (Dkt. 12, p. 24.) But Smith is the one who pitted himself against U.S. Bank when he chose to sue U.S. Bank (and on meritless claims). U.S. Bank would be on the other side of this dispute regardless of the forum.

Further, Smith's allegations regarding U.S. Bank's alleged concealment of evidence, "false statements", and redacted documents were either addressed prior to the arbitration hearing or expressly raised in Smith's closing brief. (Ex. 1, ¶¶ 13, 17; Ex. 4.) Smith does not point to any evidence in the record suggesting that the Arbitrator did not consider these matters in rendering a decision on Smith's claims. That the Arbitrator drew a different conclusion than the one Smith was hoping for does not render the arbitration proceedings fundamentally unfair to Smith.

## V. CONCLUSION

For the foregoing reasons, Smith has failed to meet his burden of proving that the Award should be vacated under Section 10 of the FAA. U.S. Bank requests that the Amended Motion be denied. U.S. Bank further requests that the Court enter judgment confirming the Award against Smith.

RESPECTFULLY SUBMITTED this March 9, 2026.

QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue, Suite 600
Phoenix, AZ 85004-2322

By: */s/ Benjamin C. Nielsen*
Benjamin C. Nielsen
Kristin N. Leaptrott

*Attorneys for Petitioner U.S. Bank N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and delivered a copy of the foregoing via United States Mail to the following:

David Y. Smith
ASPC-Eyman-Meadows #181136
P.O. Box 3500
Florence, AZ 85132

*/s/ Pam Worth*