**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| U.S. Bank NA,<br>Petitioner,<br>v.<br>David Y Smith,<br>Respondent. | No. CV-26-00430-PHX-DWL<br>**ORDER** |

In April 2024, David Smith ("Smith") sued U.S. Bank NA ("U.S. Bank") in Pinal County Superior Court, alleging that U.S. Bank improperly allowed a third party to withdraw approximately $400,000 from Smith's bank account. In response, U.S. Bank filed a motion to compel arbitration, which the state court granted. Smith then initiated arbitration against U.S. Bank with the American Arbitration Association ("AAA"). In November 2025, following a two-day evidentiary hearing, the Honorable Sally S. Duncan ("the Arbitrator") issued an arbitration award ("the Award") in which she denied relief on each of Smith's claims and awarded U.S. Bank $236,763.50 in attorneys' fees and costs.

Now pending before the Court are U.S. Bank's amended petition to confirm the Award (Doc. 27) and Smith's amended motion to vacate the Award (Doc. 12). For the reasons that follow, the Award is confirmed.

## RELEVANT BACKGROUND

I. <u>Pre-Arbitration</u>

On April 11, 2024, Smith filed a complaint against U.S. Bank in Pinal County

Superior Court. (Doc. 27 ¶ 8; Doc. 12 at 13.) The complaint sought "to hold U.S. bank liable for approximately $400,000 of alleged unauthorized transactions performed on [Smith]'s U.S. Bank accounts." (Doc. 17-1 ¶ 4.)

On September 23, 2024, U.S. Bank filed a motion to stay proceedings and compel arbitration. (Doc. 17-4 at 2.)[1]

On November 1, 2024, the Pinal County Superior Court granted U.S. Bank's motion to stay and compel arbitration. (*Id.* at 2-4.)[2] The court found that "the parties entered into a facially valid and enforceable arbitration at the time [Smith] opened a banking account with [U.S. Bank], by and through [Smith]'s agent and power of attorney." (*Id.* at 2.) The court "stay[ed] all claims against [U.S. Bank] . . . and compell[ed] [U.S. Bank] and [Smith] to submit th[e] claim to the [AAA]." (*Id.* at 3.)

On December 16, 2024, "Smith initiated AAA arbitration against U.S. Bank." (Doc. 17-1 ¶ 5.)

II. <u>The Arbitration</u>

On September 11 and 12, 2025, a two-day evidentiary hearing was held before the Arbitrator. (Doc. 17-7 at 2.)

On October 6, 2025, Smith submitted a closing brief. (Doc. 17-5.) In his closing brief, Smith noted that "his claims" were for negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing. (*Id.* at 4.) Smith requested "a full award in [his] favor" that consisted of "compensating him for the theft of his inheritance, recognizing the emotional harm inflicted, awarding attorney's fees and costs so he can be made whole, and imposing punitive damages to deter future misconduct." (*Id.* at 19-20.)

That same day, U.S. Bank submitted a closing brief. (Doc. 17-6.) In its closing brief, U.S. Bank argued that Smtih "did not meet his burden" of "proving his claims by a preponderance of the evidence" and further that "most of [Smith]'s damages are time-

---

[1] Smith alleges that U.S. Bank filed its motion on September 24, 2024. (Doc. 12 at 13.)

[2] Smith alleges that the Pinal County Superior Court granted U.S. Bank's motion on November 2, 2024. (Doc. 12 at 13.)

barred." (*Id.* at 21.) U.S. Bank requested that "[a]n award . . . be entered in [its] favor" and that "[Smith] should take nothing for his claims." (*Id.*) U.S. Bank also requested "an award of its attorneys' fees and costs." (*Id.*)

On November 7, 2025, the Arbitrator issued the Award. (Doc. 17-7.) As relevant here, the Arbitrator concluded that "[Smith] failed to meet his burden to prove that [U.S. Bank] breached an express term of a contract with [Smith]"; that "[Smith] failed to meet his burden to prove that [U.S. Bank] breached the implied covenant of good faith and fair dealing in a contract with [Smith]"; that "[Smith] failed to meet his burden to prove that [U.S. Bank] was negligent or breached any duty owed to [Smith]"; that "[Smith] failed to notify [U.S. Bank] of the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement"; that "[Smith] failed to initiate legal action against [U.S. Bank] for the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement"; that "[Smith]'s failure to comply with the notice and filing requirements of the Deposit Account Agreement precludes him from recovering $386,438.41 of his total damages"; and that "[a]s the prevailing party on [Smith's] contract claims, [U.S. Bank] is entitled to an award of attorneys' fees and costs pursuant to the Resolution of Disputes by Arbitration provision on pages 17-18 of the Deposit Account Agreement and A.R.S. § 12-341 and § 12-341.01. (*Id.* at 2-3 ¶¶ 1-3, 6-9.) Accordingly, the Arbitrator ruled as follows:

> The claims of [Smith] for negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing, are hereby denied.
>
> The claims of [Smith] for attorneys' fees and pre- and post-judgment interest are hereby denied.
>
> [U.S. Bank] is entitled to an award of attorney's fees and costs pursuant to the Resolution of Disputes by Arbitration provision on pages 17-18 of the Deposit Account Agreement and A.R.S. § 12-341 and § 12-341.01. Accordingly, Attorneys' fees are awarded in the amount of $236,763.50.

(*Id.* at 3 ¶¶ 1-3.)

On January 13, 2026, Smith purported to "file[] a motion to vacate the Award in the Pinal County Superior Court action." (Doc. 17-1 ¶ 19.) However, that action had been

dismissed several months earlier, on September 2, 2025. (*Id.* ¶ 20.)

III. Current Proceedings

On January 22, 2026, U.S. Bank filed a petition to confirm the Award. (Doc. 1.)

On February 9, 2026, Smith filed a motion to vacate. (Doc. 11.)

On February 20, 2026, Smith filed an amended motion to vacate. (Doc. 12.)[3]

On March 9, 2026, U.S. Bank filed a response to Smith's amended motion to vacate. (Doc. 17.)

On April 24, 2026, Smith filed a reply (Doc. 23) and an arbitration record in support (Doc. 24). Neither side requested oral argument.

On August 31, 2026, the Court ordered U.S. Bank to provide revised jurisdictional allegations establishing the existence of diversity jurisdiction. (Doc. 26.) U.S. Bank has now done so. (Doc. 27.)

**DISCUSSION**

I. Legal Standard

Neither party disputes that the FAA supplies the relevant standards for deciding whether the Award should be confirmed or vacated.

Under § 9 of the FAA, a confirmation application "must" be granted "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. *See also Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). Section 10(a), in turn, identifies four grounds on which an award may be vacated: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators, or either of them"; (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other

---

[3] In his amended motion to vacate, Smith states that the motion "supplement[s] [the] motion filed [on] February 4, 2026." (Doc. 12 at 1.) However, no motion was filed on February 4, 2026. To the extent Smith is arguing that his amended motion to vacate (Doc. 12) supplements his original motion to vacate filed on February 9, 2026 (Doc. 11), that is incorrect. Smith's amended motion supersedes his original motion, and the Court "treats the original motion as 'nonexistent.'" *Vernon v. City of Santa Barbara*, 2014 WL 11881035, *1 (C.D. Cal. 2014).

misbehavior by which the rights of any party have been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). *See also Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012) ("[Section] 10 of the FAA provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award . . . .").

The party seeking vacatur bears the burden of establishing that vacatur is proper. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). This burden amounts to "a high hurdle. It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). An arbitrator's award demands deference because "[b]road judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc). *See also VIP Mortg. Inc. v. Gates*, 162 F.4th 1010, 1014-15 (9th Cir. 2025) ("There is good reason for this generous deference . . . . We heed Congress' judgment that courts should have limited ability to review arbitration awards. Parties engaging in arbitration may trade greater certainty of correct legal decisions by federal courts for the efficiency and flexibility of arbitration, but that is their choice to make.") (cleaned up).

## II. Analysis

### A. **Section 10(a)(4)**

The Ninth Circuit has held that arbitrators "exceed their powers" pursuant to § 10(a)(4) "not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.'" *Kyocera Corp.*, 341 F.3d at 997 (citations omitted). Thus, the FAA allows a federal court to vacate an award only where it "evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the

law." *Id.* at 998. "These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Id.*

1. Contractual Provision

a. **The Parties' Arguments**

Smith argues that the Arbitrator exceeded her powers under § 10(a)(4) because she "applied the wrong contractual provision." (Doc. 12 at 16.) Specifically, Smith argues that "[i]n paragraphs 6, 7, and 8 of the Award, the Arbitrator found that Smith's claims were barred because he failed to timely report NON-CONSUMER ELECTRONIC BANKING TRANSACTIONS." (*Id.*) Smith argues that "[t]his is wrong on two independent grounds": (1) "Smith's account was a consumer account"; and (2) "the transactions were not electronic." (*Id.* at 16-17.) Smith contends that "[b]y applying the notice provision for non-consumer electronic banking transactions to in-person consumer withdrawals, the Arbitrator applied the incorrect rule," which was "a fundamental factual error." (*Id.* at 18.)

In response, U.S. Bank argues that "[t]he Arbitrator did not apply the wrong contractual provision." (Doc. 17 at 8.) U.S. Bank contends that "[t]he [Deposit] Account Agreement required Smith to timely notify U.S. Bank of any unauthorized transactions, other than 'consumer electronic transactions,' within 30 days after U.S. Bank made a bank statement reflecting an unauthorized transaction available to Smith" and that the Deposit Account Agreement "further stated that Smith would lose the right to recover from U.S. Bank for any unauthorized transactions, other than 'consumer electronic banking transactions,' if Smith did not file suit against U.S. Bank within one year of U.S. Bank making Smith's bank statement available to him." (*Id.*, quoting Doc. 17-3 at 3 [Deposit Account Agreement].) U.S. Bank notes that it argued during the arbitration that "$386,438.41 of the unauthorized transactions alleged by Smith were *not* consumer electronic banking transactions, that those transactions were therefore subject to the notice and filing requirements in the [Deposit] Account Agreement, and that Smith failed to

comply with those requirements." (*Id.*, footnote omitted.) U.S. Bank contends that the Arbitrator "agreed with [it] and held in the Award that Smith 'failed to notify U.S. Bank of the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement' and that [Smith] further 'failed to initiate legal action against U.S. Bank for the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement.'" (*Id.* at 8-9, cleaned up, quoting Doc. 17-7 at 2-3 ¶¶ 6-7 [the Award].) U.S. Bank also argues that "[t]o the extent the Court finds the Award's references to 'non-consumer electronic banking transactions' ambiguous, such ambiguity does not justify vacatur of the Award.'" (*Id.* at 9.)

In reply, Smith argues that "[t]he Arbitrator applied a contractual provision that does not exist, exceeding her powers under 9 U.S.C. § 10(a)(4)." (Doc. 23 at 2.) Smith argues that "[t]he phrase 'non-consumer electronic banking transactions' does not appear anywhere in the Deposit Account Agreement." (*Id.* at 3.) Smith argues that this "phrase originated in [U.S. Bank]'s own arbitration brief" and "[w]hen an arbitrator effectively dispenses her own brand of industrial justice by applying standards untethered to the parties['] agreement, the award must be vacated." (*Id.*) Smith also reiterates his argument that "[i]n-person cash withdrawals at a physical branch are not electronic banking transactions." (*Id.*) Smith argues that the Arbitrator's "ruling—built entirely on a non-existent contractual phrase—wiped out virtually the entirety of [his] recovery" and thus "vacatur is required." (*Id.* at 4.)

b. **Analysis**

Page 14 of the Deposit Account Agreement issued by U.S. Bank to Smith contains a section titled "**Your Duty to Examine Your Statement**." (Doc. 17-3 at 3.) In relevant part, that section provides: "As used in this section, the term 'problem' means any error, alteration, counterfeit check, or unauthorized transaction . . . excluding consumer electronic banking transactions . . . related to your account." (*Id.*) That section further provides that "you agree to promptly examine your statement and report to us any problem on or related

to your statement within 30 calendar days after we mail the statement (or make the statement available to you." (*Id.*) That section continues: "You may not start a legal action against us because of any problem unless: (a) you have given us the above notice and (b) the legal action begins within one year after we send or make your statement available to you." (*Id.*) Construing this section of the Deposit Account Agreement, the Arbitrator held that Smith "failed to notify [U.S. Bank] of the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement" and "failed to initiate legal action against [U.S. Bank] for the non-consumer electronic banking transactions at issue in this proceeding within the period required by the Deposit Account Agreement." (Doc. 17-7 at 2-3 ¶¶ 6, 7.) The Arbitrator concluded that Smith's "failure to comply with the notice and filing requirements of the Deposit Account Agreement precludes him from recovering $386,438.41 of his total damages." (*Id.* at 3 ¶ 8.)

Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed the task poorly." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013). *See also VIP Mortg. Inc.*, 162 F.4th at 1014 ("[C]ourts do not decide the rightness or wrongness of the arbitrators' contract interpretation—we must only decide whether the panel's decision draws its essence from the contract. We cannot vacate an award simply because we might have interpreted the contract or statute differently.") (cleaned up). "An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (cleaned up). Accordingly, "the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569.

These principles foreclose Smith's challenge. The Arbitrator's determinations that the transactions at issue were "non-consumer electronic banking transactions," that Smith

failed to notify U.S. Bank of those transactions within the "period required by the Deposit Account Agreement," and that Smith "failed to initiate legal action" against U.S. Bank "within the period required by the Deposit Account Agreement" each draw their essence from the contract. (Doc. 17-7 at 2-3 ¶¶ 6-7.) As for Smith's contention that "[t]he phrase 'non-consumer electronic banking transactions' does not appear anywhere in the Deposit Account Agreement" (Doc. 23 at 3), the Deposit Account Agreement expressly provides that "the term 'problem' means any . . . unauthorized transaction . . . excluding consumer electronic banking transactions." (Doc. 17-3 at 3). "It is the arbitrator's construction of the contract which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. The arbitrator's construction holds, however good, bad, or ugly." *Oxford Health Plans LLC*, 569 U.S. at 573 (cleaned up).

2. Bank Statements

a. **The Parties' Arguments**

Smith acknowledges that the "30-day notice provision [in the Deposit Account Agreement] requires the customer to report unauthorized transactions within 30 days after statements are mailed or made available" but contends that "U.S. Bank never made statements available to [him]." (Doc. 12 at 20.) Smith argues that "[a] bank cannot invoke a notice defense when it prevented the customer from receiving notice," so"[t]he 30-day clock never started." (*Id.* at 21.)

In response, U.S. Bank argues that Smith's "argument fails because the issue of whether and when U.S. Bank made Smith's bank statements available to him is a question of fact." (Doc. 17 at 10.) U.S. Bank contends that this "issue was discussed at length in both parties' closing briefs and was the subject of considerable amounts of exhibits and live testimony during the Arbitration." (*Id.*) U.S. Bank adds that "[t]he Arbitrator's factual findings on this issue are supported by the record and are not subject to reconsideration by this Court in any event." (*Id.*)

In reply, Smith again argues that "[t]he 30-day reporting requirement was never

triggered because the bank failed to make statements available to [him] at his prison address." (Doc. 23 at 5.) Smith argues that he "made three written notarized requests for account statements," yet U.S. Bank "did not make statements available to [him]." (*Id.*) Smith concludes that "[i]f the 30-day clock never started running, it could not have expired." (*Id.*)

b. **Analysis**

To the extent the Arbitrator made an implied factual determination that U.S. Bank provided Smith his bank statements, as required to trigger the 30-day notice provision under the Deposit Account Agreement, any such determination would be "a factual finding, and the FAA does not allow judicial review of whether an arbitrator's factual findings 'are supported by the evidence in the record.'" *Serna v. Northrop Grumman Sys. Corp.*, 2022 WL 2702569, *1 (9th Cir. 2022) (citation omitted). *See also VIP Mortg. Inc.*, 162 F.4th at 1015 ("Generally, an arbitrator's unsubstantiated factual finding cannot justify federal court review of an arbitral award under the FAA. As we have explained, it is not enough to show that the panel committed an error—or even a serious error. Nor does a manifest disregard of the facts provide a basis to vacate an arbitration award.") (cleaned up); *Bungie, Inc. v. Aimjunkies.com*, 2023 WL 3971787, *3 (W.D. Wash. 2023) ("[T]he Arbitrator made numerous factual findings . . . [t]he Court cannot reexamine these factual findings.").

3. <u>A.R.S. § 47-4406(E) And Arizona Case Law</u>

a. **The Parties' Arguments**

Smith argues that "[u]nder A.R.S. § 47-4406(E), Smith's failure to provide notice within 30 days does NOT preclude his claims because the Bank failed to exercise ordinary care and did not act in good faith." (Doc. 12 at 20.) Smith contends that "[t]he Arbitrator was provided with this statute and refused to apply it." (*Id.*) Smith also argues that "[t]he Arbitrator's decision ignores well-established Arizona law." (*Id.* at 22.) Specifically, Smith points to *Stewart v. Phoenix Nat. Bank*, 64 P.2d 101 (Ariz. 1937), *Rawlings v. Apodaca*, 726 P.2d 565 (Ariz. 1986), and *Doe v. Roe*, 955 P.2d 951 (Ariz. 1998). (*Id.* at 22-23.)

In response, U.S. Bank argues that "Smith has not identified any evidence in the record indicating that the Arbitrator intentionally disregarded any well-defined, explicit, and clearly applicable Arizona law." (Doc. 17 at 11.) As for A.R.S. § 47-4406(E), U.S. Bank argues that "Smith provided no evidence supporting his assertion that the Arbitrator was aware of and intentionally ignored this statute" and that his "argument fails for that reason alone." (*Id.*) U.S. Bank further argues that whether it "acted with ordinary care and in good faith [under § 47-4406(E)] are questions of fact, which here the Arbitrator determined." (*Id.* at 12.) As for the three Arizona cases cited by Smith, U.S. Bank argues that "Smith simply identifies these cases in the Amended Motion without providing any explanation as to how the Arbitrator manifestly disregarded these cases (which she did not)." (*Id.*) U.S. Bank contends that Smith was "required to identify some evidence in the record, other than the mere fact that the Arbitrator ruled against Smith, showing that the Arbitrator was aware of the law and intentionally disregarded it" and that he "failed to do so." (*Id.* at 13.)

In reply, Smith again argues that "[t]he Arbitrator manifestly disregarded Arizona law." (Doc. 23 at 15.) Smith argues that the Arbitrator manifestly disregarded A.R.S. § 47-4406(E) because the statute "was cited in [his] closing brief" and "[t]he Award does not mention A.R.S. § 47-[4]406(E)." (*Id.* at 15-16.) Smith argues that the Arbitrator's "silence on a directly applicable statute that was presented to her—combined with her enforcement of the 30-day rule despite overwhelming evidence of [U.S.] Bank's lack of ordinary care and good faith—constitutes manifest disregard." (*Id.* at 16.) Smith also argues that "common law principles clearly establish that a bank accepting [a] clearly altered instrument bears the loss" and that "[t]his principle was applicable and presented" yet "[t]he arbitrator ignored it entirely, instead applying a notice defense that presupposes valid authorization." (*Id.*)

b. **Analysis**

"'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Michigan Mut.*

*Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995). "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.* "[E]ven misstatements of the law followed by erroneous application of the law do not provide grounds upon which a reviewing court may vacate an arbitral award under the FAA." *Biller*, 668 F.3d at 668 n.7. Thus, arguing that an arbitrator "misunderstood the law and misapplied it" does not supply sufficient grounds for vacatur. *Id. See also Bosack*, 586 F.3d at 1104 ("To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to . . . intentionally disregard it.") (cleaned up). "Moreover, to rise to the level of manifest disregard, the governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879-80 (9th Cir. 2007) (cleaned up).

These principles foreclose Smith's challenge. One of Smith's theories appears to be that because he cited A.R.S. § 47-4406(E) and the three Arizona cases at issue but the Award did not expressly mention those authorities, the Arbitrator must have intentionally disregarded them. But this argument overlooks that "arbitrators are not required to state the reasons for their decisions." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). *See also Bosack*, 586 F.3d at 1104 ("Arbitrators are not required to set forth their reasoning supporting an award."). This approach may be frustrating from the perspective of the losing party, but it makes it "all but impossible to determine whether [the arbitrator] acted with manifest disregard for the law." *Bosack*, 586 F.3d at 1104 (citation omitted). *See also ENH LLC v. Amazon.com Servs. LLC*, 2025 WL 1447514, *5 (W.D. Wash. 2025) ("ENH only points to the lack of explicit citation to *Watson* in the award, the arbitrator's legal conclusion and result, and Arbitrator Rose's reference to submitted deposition testimony. This does not indicate that Arbitrator Rose intentionally disregarded the two-prong test in *Watson* and cannot provide an adequate foundation for vacatur."); *Mission Wellness Pharmacy LLC v. Caremark LLC*, 2023 WL 4136606, *5 (D. Ariz. 2023) ("Caremark fails to show that the Arbitrator acknowledged Arizona law and

chose to disregard it, which is what the FAA requires."); *City of Alturas v. Adkins Consulting Eng'rs, Inc.*, 2014 WL 1255848, *4 (E.D. Cal. 2014) ("Even if the licensing allegations amounted to illegality, the City has not produced evidence that the arbitrators understood and correctly stated the law, and then proceeded to disregard it.").

In short, although Smith may have "briefed the [Arbitrator]" on the aforementioned authorities, such that the Arbitrator "was 'aware' of" the authorities, "there is no sign that the [Arbitrator] recognized that [the relevant authorities] applied to the set of facts before [her]—such that [she] 'intentionally disregarded'" them. *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1243 (9th Cir. 2022).

B. **Section 10(a)(3)**

1. <u>The Parties' Arguments</u>

Smith argues that "[t]he Arbitrator refused to consider material evidence" and thus the Award should be vacated under § 10(a)(3). (Doc. 12 at 21.) Smith argues that "[t]he Arbitrator's finding that Smith failed to meet his burden of proof cannot be reconciled with the evidence presented" and thus "[t]he Arbitrator effectively refused to consider" various pieces of material evidence. (*Id.*) More specifically, Smith argues that the Arbitrator effectively refused to consider: (1) "[U.S. Bank's] false denial"; (2) "the employee admissions"; (3) "Hardrick's contradictory statement"; (4) "the self-dealing"; and (5) "the redacted approval chain." (*Id.* at 21-22.)

In response, U.S. Bank argues that "[a]rbitrators enjoy broad discretion to admit or exclude evidence" and that "[t]o justify vacating an arbitration award on the basis that an arbitrator refused to hear material evidence, Smith must prove that the arbitrator's refusal to hear evidence demonstrates bad faith or be so gross as to amount to affirmative misconduct." (Doc. 17 at 13, cleaned up.) U.S. Bank argues that "Smith does not identify any evidence that the Arbitrator actually refused to consider, let alone any evidence that the Arbitrator refused to consider in bad faith," "[n]or could he do so, because the issues Smith claims the Arbitrator refused to consider were all discussed at length in the one-hundred plus exhibits, during the hearing, and in Smith's closing brief." (*Id.* at 13-14.)

U.S. Bank also argues that "in the Amended Motion Smith argues only that the Arbitrator 'effectively' refused to consider certain evidence . . . [b]ut Section 10(a)(3) does not permit vacatur because one party disagrees with how an arbitrator rules based on the evidence presented to her." (*Id.* at 14.)

In reply, Smith argues that "when arbitrators['] findings cannot be reconciled with undisputed documentary evidence in the record, that rises above mere disagreement about weight." (Doc. 23 at 16.) Smith argues that the Arbitrator admitted several exhibits "but stated they held little weight" and contends that "[u]ncondradicted [sic] documentary evidence . . . cannot rationally be given no weight." (*Id.* at 16-17.) Smith also argues that "[w]hen an arbitrator admits evidence and then refuses to consider it in reaching her decision, that is functionally equivalent to refusing to hear it." (*Id.* at 17.)

2. <u>Analysis</u>

"The Supreme Court and Ninth Circuit have set a high bar for those who move to vacate an arbitration award under § 10(a)(3)." *Lindsey v. Travelers Com. Ins. Co.*, 636 F. Supp. 3d 1181, 1184 (E.D. Cal. 2022). "Arbitrators enjoy wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *U.S. Life Ins. Co.*, 591 F.3d at 1175 (internal quotations and citation omitted). "To meet the standard for vacating the award, the arbitrator's refusal to hear evidence 'must demonstrate bad faith or be so gross as to amount to affirmative misconduct.'" *Immersion Corp. v. Sony Computer Ent. Am. LLC*, 188 F. Supp. 3d 960, 974 (N.D. Cal. 2016) (citation omitted).

Smith does not argue that the Arbitrator literally refused to hear any evidence he sought to present. Indeed, the record—which includes Smith's closing brief (Doc. 17-5), transcripts from the arbitration (Doc. 24 at 2; Doc. 24-1 at 2-21, 65-73, 104-105), and exhibits submitted during the arbitration (Doc. 24 at 2; Doc. 24-1 at 22-45, 48-64, 74-103, 106-09)—demonstrates that the Arbitrator "allowed each party the opportunity to complete its presentation by submitting a brief and participating in the hearing." *U.S. Life Ins. Co.*, 591 F.3d at 1175. Instead, Smith argues that the Arbitrator "effectively" refused to consider material evidence because the Award cannot be reconciled with certain evidence

he presented. But Smith's disagreement with how the Arbitrator weighed his evidence is insufficient to justify vacatur under § 10(a)(3). *See, e.g.*, *Ju v. Lacombe*, 2019 WL 5294423, *3 (W.D. Wash. 2019) (denying motion to vacate under § 10(a)(3) where movant "fail[ed] to establish that the arbitrator refused to hear pertinent evidence"); *Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 389 F. Supp. 3d 687, 696-97 (N.D. Cal. 2019) (denying motion to vacate under § 10(a)(3) where movant "[did] not allege that it sought to submit any evidence that the arbitrator refused to consider" and "[t]he arbitrator . . . did not exclude any evidence submitted by [the movant]"); *Pure Line Seeds, Inc. v. Gallatin Valley Seed Co.*, 2014 WL 3721271, *3 (D. Idaho 2014) (denying motion to vacate under § 10(a)(3) where "the record does not support the [movant]'s argument that the Arbitrator 'flatly refused to hear pertinent and relevant evidence'"); *Schoenduve Corp. v. Lucent Techs., Inc.*, 2004 WL 5573951, *9 (N.D. Cal. 2004), *aff'd*, 442 F.3d 727 (9th Cir. 2006) (denying motion to vacate under § 10(a)(3) where the movant "fail[ed] to point to any evidence that the arbitrator actually *refused* to hear").

### C. Unconscionability

#### 1. <u>The Parties' Arguments</u>

Smith argues that "[t]he Arbitration Award is unconscionable and unenforceable." (Doc. 12 at 23.) First, Smith argues there was "procedural unconscionability" because (1) "[he] never signed the Deposit Account Agreement containing the arbitration clause"; (2) "[t]he account was opened by his aunt under a Power of Attorney while Smith was incarcerated"; (3) "[he] never received a copy of the agreement"; (4) "[he] had no meaningful choice"; and (5) "[t]he arbitration clause was buried on pages 17-18 of a lengthy form contract." (*Id.*) Second, Smith argues there was "substantive unconscionability" because (1) "[he] had no internet access to research the law or review electronic discovery"; (2) "[he] could not attend hearings in person"; (3) "[he] had severely restricted telephone and mail privileges"; (4) "[U.S. Bank] had unlimited resources"; and (5) "[t]he arbitration resulted in a $236,763.50 fee award against Smith, a prisoner with no

assets." (*Id.* at 23-24.) Smith contends that "[u]nder Arizona law a contract clause is unenforceable if it is both procedurally and substantively unconscionable." (*Id.* at 24.)

In response, U.S. Bank first argues that "'[u]nconscionability' is not one of the grounds available to vacate an arbitration award under the FAA and the Court should therefore not consider this issue." (Doc. 17 at 14.) U.S. Bank next argues that "it appears . . . that Smith's argument here is not that the Award is unconscionable, but that the underlying arbitration agreement itself and the fairness of the underlying arbitration proceedings are unconscionable." (*Id.*) As for "the enforceability of the arbitration agreement," U.S. Bank argues that "[t]his issue was already litigated in the Arizona superior court when U.S. Bank moved to compel arbitration," and the court "determined that the arbitration agreement was not substantively or procedurally unconscionable, and that Smith was bound by the arbitration agreement because it was signed on Smith's behalf by his valid power-of-attorney." (*Id.*) U.S. Bank argues that "Smith provides no basis for this Court to reconsider that decision" and that, by initiating and participating in the arbitration proceedings, "Smith has waived any claim that the arbitration agreement is not enforceable." (*Id.* at 14-15.) As for substantive unconscionability, U.S. Bank argues that "Smith's personal circumstances do not justify vacating the Award, especially considering that Smith was represented by competent counsel at all times" and that the circumstances "would be present regardless of the forum in which Smith brought his claims against U.S. Bank." (*Id.* at 15, footnote omitted.)

In reply, Smith first reiterates that he "never assented to the Deposit Account Agreement, and cannot be bound by its terms." (Doc. 23 at 4.) Smith adds that "[a]n award that enforces terms against a party who demonstrably never received, reviewed, or agreed to them cannot be confirmed." (*Id.* at 5.) Second, Smith argues that "the §236,763.50 fee award against an indigent, incarcerated, pro se Respondent is unconscionable and independently exceeds the arbitrator[']s authority." (*Id.* at 12.) Third, Smith argues that "[t]he superior court order compelling arbitration does not bar [his] claims" because "[i]t did not adjudicate: (1) whether [Smith] received the [Deposit Account] Agreement before

the dispute arose; (2) whether the [Deposit Account] Agreement was enforceable against an incarcerated individual who had no access to its terms; or (3) whether the specific outcome produced by the arbitration—zero recovery plus $236,000 in fees—is unconscionable as applied." (*Id.* at 14-15.) Finally, Smith argues that although U.S. Bank "argues that [his] participation in arbitration waives his objections," "[he] only participated because he was ordered to by a court" and thus "cannot be deemed to have voluntarily accepted the forums terms by complying with that order." (*Id.* at 15.)

2. <u>Analysis</u>

As discussed, the FAA "enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award." *Bosack*, 586 F.3d at 1102 (citation omitted). *See also Biller*, 668 F.3d at 664 ("[Section] 10 of the FAA provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award."). Thus, to the extent Smith is arguing that the Award itself is unconscionable, either because of his limited resources or due to the size of the fee award issued against him, that is not a cognizable basis for seeking vacatur. *Cf. Marine Club Manager, Inc. v. RB Com. Mortg., LLC*, 2023 WL 4919690, *8 (W.D.N.C. Aug. 1, 2023), *aff'd*, 2024 WL 3617552 (4th Cir. 2024) ("Petitioners' argument that the Court should vacate the first award because it awards unreasonable and unconscionable attorneys' fees to Respondent must be rejected. Petitioners have failed to show that the Arbitrator issued an award that simply reflects their own notions of economic justice or manifestly disregards the law.") (cleaned up); *Murillo v. A Better Way Wholesale Autos, Inc.*, 2019 WL 3081062, *8 (D. Conn. 2019) ("This Court acknowledges that the arbitrator's award of punitive damages in this case at twenty-five times the actual and statutory damages, for a total of $234,708.50 in punitive damages, is significant. But even if this Court believed that such an award would constitute an abuse of discretion if imposed by a court, such a standard is not applicable on review of an arbitration decision.").

To the extent Smith is arguing that the underlying arbitration agreement, which appears on pages 17-18 of the Deposit Account Agreement (Doc. 17-3 at 6-7), is

unconscionable, the Court agrees with U.S. Bank that the Pinal County Superior Court has already decided that issue (Doc. 17-4) and the Court may not revisit that decision. "Federal courts are compelled by the 'full faith and credit' statute to give collateral estoppel and res judicata effects to the judgments of state courts." *Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712 (9th Cir. 1992) (citing 28 U.S.C. § 1738).

Smith argues, among other things, that the underlying arbitration agreement is unconscionable because he never received a copy, the clause was buried within the Deposit Account Agreement, and his bank account was opened under his aunt's power of attorney while he was incarcerated. (Doc. 12 at 23.) Smith further contends that the Pinal County Superior Court "did not adjudicate" whether he ever received the Deposit Account Agreement or whether the Deposit Account Agreement was enforceable against him. (Doc. 23 at 15.) But in its order compelling arbitration, the Pinal County Superior Court held that "the parties entered into a facially valid and enforceable arbitration agreement at the time [Smith] opened a banking account with [U.S. Bank], by and through [Smith]'s agent and power of attorney." (Doc. 17-4 at 2.) The court further held that although Smith "argue[d] that he never saw the arbitration agreement and, therefore, should not be bound to this agreement, . . . he [did] not dispute that the account was opened by his agent and power of attorney, nor [did] he dispute that his agent and power of attorney entered into this arbitration agreement on his behalf." (*Id.*) The court concluded that "the arbitration agreement is enforceable" and that Smith's "admitted circumstances . . . [did] not support a conclusion in favor of substantive or procedural unconscionability." (*Id.* at 3.)

Under Arizona law, "an order to compel arbitration, without more, is not appealable." *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 977 P.2d 769, 775 (Ariz. 1999). Accordingly, the Court cannot reexamine the issues already decided by the Pinal County Superior Court, as "such review of a state court decision creates needless friction between the state and federal forums." *Se. Res. Recovery Facility Auth.*, 973 F.2d at 714.

Alternatively, even assuming the Court is not foreclosed from reviewing the Pinal County Superior Court's decision on the validity of the underlying arbitration agreement,

"unconscionability of the underlying arbitration agreement is not one of the enumerated grounds for vacating an award under the FAA," and "the Court does not have the power to vacate an arbitration award on that ground." *Biglow v. Dell Techs., Inc.*, 2024 WL 5165726, *2 n.2 (D. Kan. 2024), *aff'd*, 2026 WL 813756 (10th Cir. 2026).

D. **Fairness**

1. The Parties' Arguments

Smith argues that "[t]he Award is fundamentally unfair." (Doc. 12 at 24.) Smith emphasizes that "[t]he arbitration pitted an incarcerated indigent individual against one of the largest banks in the United States." (*Id.*) Smith argues that U.S. Bank "exploited this disparity by: concealing evidence for over two years; making false statements through its attorney; producing heavily redacted documents; refusing to settle despite overwhelming evidence (largest pre-hearing offer: $30,000); [and] seeking § 236,763.50 in attorneys['] fees against a prisoner." (*Id.*, cleaned up.)

In response, U.S. Bank argues that "[a]n arbitration proceeding is fundamentally fair if it meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator" and that "Smith received all three—he participated fully in the arbitration proceeding, the Arbitrator held a two-day evidentiary hearing, and there is no evidence anywhere in the record suggesting that the Arbitrator's decision was biased in favor of U.S. Bank." (Doc. 17 at 15-16, cleaned up.) U.S. Bank also argues that "Smith is the one who pitted himself against U.S. Bank" and that it "would be on the other side of this dispute regardless of the forum." (*Id.* at 16.) Finally, U.S. Bank argues that "Smith's allegations regarding U.S. Bank's alleged concealment of evidence, 'false statements', and redacted documents were either addressed prior to the arbitration hearing or expressly raised in Smith's closing brief" and that "Smith does not point to any evidence in the record suggesting that the Arbitrator did not consider these matters in rendering a decision on Smith's claims." (*Id.*)

Smith does not respond to U.S. Bank's arguments on this issue in his reply.

…

2. Analysis

As discussed, the FAA "enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award." *Bosack*, 586 F.3d at 1102 (citation omitted). Disagreement with the perceived "fairness" of an arbitration award is not one of the enumerated grounds for vacatur.

To the extent Smith was intending to seek vacatur under § 10(a)(3), "[w]hen a court assesses a claim of misconduct or misbehavior under section 10(a)(3), it does not ask whether the arbitrator's decisions were right or wrong; rather, it asks 'whether the parties received a fundamentally fair hearing.'" *Lindsey*, 636 F. Supp. 3d at 1184 (quoting *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152 (9th Cir. 2016)). "A hearing is fundamentally fair if the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator—are met." *Carpenters 46 N. Cal. Cntys. Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996). A hearing is fundamentally unfair if the arbitrator's procedure was a "sham, substantially inadequate or substantially unavailable." *Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 (9th Cir. 1987) (citations omitted).

U.S. Bank argues that Smith "received all three" components of a fundamentally fair hearing (Doc. 17 at 15), Smith does not contest that point, and the Court's independent review of the record confirms that U.S. Bank's position is correct. Accordingly, Smith's unfairness challenge fails.

**E. Additional Arguments Raised In Smith's Reply**

In his reply brief, Smith raises a series of new arguments for the first time. Specifically, Smith argues that (1) "[n]o valid power of attorney ever existed and the self-dealing transaction on April 11 predates any valid authorization" (Doc. 23 at 6-7); (2) "[U.S. Bank] violated its own account opening procedures and applicable know-your-customer obligations" (*id.* at 10-11); (3) "Edward Carr's arrest and Virginia Hernandez's document role establish the existence of an organized scheme that the bank facilitated" (*id.* at 11-12); (4) "[Smith]'s claims are not time-barred because [U.S. Bank]'s concealment

tolled any applicable limitations period" (*id.* at 13-14); and (5) "U.S. Bank is independently liable under common law aiding and abetting" (*id.* at 17-19).

As an initial matter, the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). At any rate, Smith's new arguments fail to invoke any of the enumerated grounds for vacatur under the FAA.

Accordingly,

**IT IS ORDERED** that:

1. U.S. Bank's amended petition to confirm (Doc. 27) is **granted**.[4]

2. Smith's amended motion to vacate (Doc. 12) is **denied**.

3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 8th day of September, 2026.

Dominic W. Lanza
United States District Judge

---

4 To the extent U.S. Bank's amended petition includes a passing request to recover the attorneys' fees and costs incurred in this proceeding (Doc. 27 at 4), U.S. Bank may pursue that request by filing a motion pursuant to LRCiv 54.2. The Court notes that the FAA itself does not authorize a fee award in this circumstance. *See, e.g.*, *Ennis, Inc. v. Gildan Activewear SRL*, 2019 WL 3716426, *1 (N.D. Tex. 2019) ("The [FAA] is not a statutory basis for a prevailing party in an action to confirm or vacate an arbitration award to receive attorneys' fees and costs. Gildan must therefore rely upon a contractual provision or another, alternative basis under the law in arguing that it is entitled to attorneys' fees.") (citation omitted).